IN THE UNITED STATES DISTRICT COURT

FOR THE DIVISION OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| D.E., an individual<br><br>            Plaintiff,<br><br>    v.<br><br>AMERICAN AIRLINES, a Corporation, and DOES 1-25, inclusive<br><br>            Defendants. | Case No.:<br><br>**COMPLAINT**<br><br>1. Negligence<br>2. Negligence Per Se<br>3. Negligent Supervision<br>4. Violation of Title III of Americans with Disabilities Act<br><br>**JURY TRIAL DEMANDED** |

NOW COMES, Plaintiff D.E. for claims of relief against Defendant and Does 1-25 inclusive. Plaintiff request that the initials D.E. be used in lieu of full name for confidentiality purposes. Plaintiff is a victim of domestic abuse and requires privacy protection for safety reasons. Plaintiff complains and alleges as follows:

**JURISDICTION, VENUE, AND PARTIES**

1.

This court has subject matter jurisdiction under the provision of Title 28, United States Code Section 1332, in that this suit is a civil action between citizens of different States where the matter and actual controversy exceeds the value of $75,000.00, exclusive of interest and costs; and/or pursuant to Title 28, United States Code Section 1332, because some of the claims pled arise under the Americans' with Disabilities Act.

2.

Venue is appropriate in this court pursuant to Title 28, United States Code, Section 1391(b)(2), because a substantial part of the events or omissions giving rise to the claim occurred in the Multnomah County, Oregon; and/or pursuant to United States Code, Section 1391(c)(2) because Defendant(s), and each of them, are statutorily considered to be residents of the State of Oregon; are subject to personal jurisdiction in Oregon; and have sufficient contacts with Oregon including conduction continuous business in this state.

3.

Defendant(s), and each of them, made a contract with Plaintiff to be performed in whole or in part in the State of Oregon, and routinely operate flights into and out of Portland, Oregon/ Portland International Airport. Defendant's contacts with the State of Oregon were deliberate and purposeful, and Plaintiff's claims arise from those contacts, such that exercise of personal, specific and/or general, jurisdiction over the Defendant(s) in the state of Oregon is consistent with traditional notions of fair play and substantial justice.

4.

Upon information and belief, at all times relevant to this matter, American Airlines had the right to control the work of its employees and/or agents regarding American Airlines

treatment of Plaintiff, fulfillment of duties owed to Plaintiff, protection of Plaintiff's rights and fulfillment of Plaintiff's contract to fly from Portland, Oregon to Dallas, Texas and back to Portland, Oregon; the right to prescribe and furnish the details of the kind and character of the work to be done regarding American Airlines treatment of Plaintiff, fulfillment of duties owed to Plaintiff, protection of Plaintiff's rights and fulfillment of Plaintiff's contract to fly from Portland, Oregon to Dallas, Texas and back to Portland, Oregon; the right to supervise and inspect the work regarding American Airlines employees and/or agents treatment of Plaintiff, fulfillment of duties owed to Plaintiff, protection of Plaintiff's rights and fulfillment of Plaintiff's contract to fly from Portland, Oregon to Dallas, Texas and back to Portland, Oregon; the right to direct the details of the manner in which the was to be done regarding American Airlines employees and/or agents treatment of Plaintiff, fulfillment of duties owed to Plaintiff, protection of Plaintiff's rights and fulfillment of Plaintiff's contract to fly from Portland, Oregon to Dallas, Texas and back to Portland, Oregon; and other non-enumerated rights.

## **STATEMENT OF FACTS**

By reference, each of the preceding paragraphs are adopted and made part of this section as if fully incorporated herein.

5.

In August 2016, Plaintiff applied for a Field Interviewer position with Westat to work on the Population Assessment of Tobacco and Heath (PATH) study. PATH is a longitudinal health study sponsored by the Food and Drug Administration (FDA) and the National Institute of Health (NIH).

6.

1  The PATH study Field Interviewer position required away from home training in Dallas, Texas.

2  Plaintiff was scheduled to leave Portland, Oregon for training on November 1, 2016 to Dallas,

3  Texas and return on November 8, 2016.

4                                                     7.

5  In 2011, Plaintiff was diagnosed with Post Traumatic Stress Disorder (PTSD) as a result of

6  twenty years of domestic violence. November 21, 2013, City Dog Country Dog Training

7  certified that Plaintiff's service dog successfully completed a Public Access test conducted in

8  Portland, Oregon. Because Plaintiff was traveling for eight days, her service dog was needed.

9                                                     8.

10 At all material times, Plaintiff's service dog was a "Service Animal" under the Americans with

11 Disability Act ("ADA"); not an "Emotional Support Animal" or "Psychiatric Support Animal."

12

13                                                    9.

14 On October 21, 2016, the representative for Westat travel made Plaintiff's travel arrangements in

15 pertinent part as follows: American Airlines, Flight 2472 on November 1, 2016 departing

16 Portland International Airport (PDX) at 7:30am with extra leg room for her service dog. The seat

17 number was 9A.

18                                                   10.

19 Prior to and at the time of the events that give rise to Plaintiff's claims, American Airlines

20 website states that Service Animals are welcomed on flights. There are no additional charges for

21 service animals traveling in the cabin. It further states that service animals cannot block the aisle.

22                                                   11.

23 After Plaintiff's flights were booked, she contacted her doctor to complete the American Airlines
   service dog request documents.

PAGE 4 – COMPLAINT AND JURY TRIAL DEMAND

12.

On October 24, 2016, Plaintiff's primary care physician, Dr. Hamlett, signed an American Airlines Psychiatric Service Animal request form for her November 1, 2016 and November 8, 2016 flights.

13.

On October 27, 2016, Plaintiff submitted both American Airlines Psychiatric Service Animal request forms to American Airlines which satisfied any requirements to be able to travel with her Service Animal as set forth on American Airlines' website.

14.

On October 27, 2016, Plaintiff called Transportation Security Administration (TSA) Cares and explained that she would be traveling on November 1, 2016 and needed accommodations while navigating security with her service dog. TSA PDX responded quickly. Plaintiff received an email on October 28, 2016 confirming her request for November 1, 2016 accommodations. The TSA agent, Aarin McCarthy, suggested Plaintiff arrive at 5:30am for her 7:30am flight and call TSA Cares upon arriving at the airport.

15.

On October 27, 2016, Plaintiff contacted American Airlines main customer service number and spoke to a representative named Lori. Plaintiff requested that Special Services contact her to discuss and arrange reasonable accommodations. She also sent an email to sacesk.sro@as.com which included the signed American Airlines Psychiatric Service Animal request forms. Because Plaintiff did not want to prejudice herself by waiting for a call from Special Services, she initiated the call and spoke with employee RD6.

Plaintiff explained to RD6 that she needed reasonable accommodations for her service animal with a seat that would accommodate her and her service dog. RD6 stated that her current seat, 9B, would not provide additional leg room. Then, RD6 put in a request for seat 7A, a bulkhead/window seat, to provide room for Plaintiff and her service dog. RD6 instructed Plaintiff to get her seat at the ticket counter on the day of the flight while checking in. RD6 stated that all reasonable accommodation documentation was available and ready for the ticket agent. Based on the conversation with RD6, Plaintiff reasonably believed that she completed the necessary steps to put American Airlines on notice and obtain a reasonable accommodation for November 1, 2016.

16.

On October 31, 2016, Plaintiff packed a separate bag for her service dog which included a week's worth of food, toys, leashes, poop bags, treats and treat pouches, bowls, blankets, bedding, and allergy medicine. Plaintiff's service dog also needed an inflight back pack which included service dog documents, poop bags, travel bowls, two Kongs packed with food to be consumed on the plane, a grey pad to put on the airplane floor, a towel, treats, back up leash and harness, and anxiety medicine for the flight. Plaintiff's stow away luggage weighed approximately 150 pounds. Her carry-on luggage weighed approximately 50 pounds.

17.

On November 1, 2016, Plaintiff and her service dog were dropped off at PDX near pet relief. Plaintiff was toting roughly 200 pounds of luggage but was able to escort her service dog to pet relief. Plaintiff's service dog was able to relieve himself.

18.

As instructed, Plaintiff called TSA to give notice that she arrived. She took the elevator up to the main ticketing floor and went to the American Airlines ticket counter. She expected to have reasonable accommodations waiting for her.

When Plaintiff approached the American Airlines ticket counter, she was met by a young female ticket agent. Plaintiff told the ticket agent that she already made arrangement through Special Services which employee RD6 documented reasonable accommodations for seat 7A.

19.

The female ticket agent stated that she did not care about disability accommodations, the need for a Special Care Assistant, and the only seat she was assigning Plaintiff was original seat 9B.

20.

Plaintiff was told that American Airlines would not make any changes to paying customers seats to accommodate her. Plaintiff was getting extremely stressed because she realized that the ticket agent was not going to afford her any reasonable accommodations.

21.

Plaintiff asked to speak with a supervisor. A middle-aged woman believed to be of Hispanic origin came to speak with Plaintiff. She was the supervisor. The supervisor said American Airlines does not have to assist Plaintiff. The supervisor clearly and concisely refused to assist and told Plaintiff to take it up with the gate agent.

22.

Plaintiff was extremely stressed but made her to security in hopes of resolving the issue at the gate. TSA Cares was expecting her. The TSA agent took Plaintiff and her service dog expeditiously through security.

23.

Once Plaintiff arrived at the gate, she waited for a gate attendant. Unfortunately for Plaintiff, the gate attendants where the original young female ticket agent and supervisor. They again stated that reasonable accommodations would not be given. Plaintiff stated that American Airlines was violating disability laws. They smirked and laughed at Plaintiff and sent her away. Plaintiff stood at the gate for minutes trying to get a resolution.

24.

Plaintiff was in helpless panic as other passengers stared. She was emotionally crushed and humiliated by the conduct of American Airlines agents, who discriminated against her because of her disability and publicly shamed her. She moved to the right side of the gate counter and called American Airlines Special Assistance.

25.

A male employee answered Plaintiff's call to American Airlines Special Assistance. She expressed that the hostile ticket and gate agents would not accommodate her disability. Again, she was told that they could do nothing to assist. The male employee said Plaintiff needed to address it with the gate attendants.

26.

The boarding process begun. American Airlines continued to refuse reasonable accommodations to Plaintiff and her service dog. She was distraught and humiliated.

27.

Plaintiff went back to the gate counter. The standard answer to her reasonable accommodations request was that American Airlines would not ask paying customers to change their seat.

28.

Plaintiff was experiencing PTSD symptoms and profusely crying. Because flying requires her service dog to be medicated, he could not respond and assist Plaintiff.

EFREM LAWRENCE LAW FIRM
1000 SW BROADWAY, SUITE 2400
PORTLAND, OR 97205
503.719.6667

29.

Plaintiff was out of options as the flight boarded. The American Airlines gate attendant decided to assign Plaintiff seat 7C, an isle seat. Plaintiff objected to having her service dog in an isle seat. She was told to take it or leave it. Again, American Airlines ticket agents stated that they would not ask paying non-disabled customers to change seats.

30.

Because Plaintiff needed to be in Dallas, Texas for training, she boarded the flight. Plaintiff was in a panic trying to figure out how she was going to get her service dog on the flight in an isle seat. Plaintiff did not want a stressed dog on a flight. She had worked diligently to put protocols in place to sooth her service dog during flights.

31.

Hoping that the flight crew would be more helpful, Plaintiff immediately explained to the onboard flight attendant that she was refused reasonable accommodations for her disability and service dog. The flight attendant stated that she was not going to ask a passenger to change seats since they paid for the seat.

32.

The flight attendant told Plaintiff that the kindness of another passenger would be the only way to get a seat change.

33.

Subsequently, the passenger assigned to seat 7A arrived. Plaintiff was frantic and begged him to change seats. He agreed. The passenger in seat 7B arrived. Plaintiff had no leg room in the one by one-foot space that her and her service dog were crammed in. Eventually, the flight attendant asked seat 7B if she would like to relocate to seat 9F. The flight attendant offered 9F to the passenger as an accommodation to said passenger because the dog was inconveniencing

EFREM LAWRENCE LAW FIRM
1000 SW BROADWAY, SUITE 2400
PORTLAND, OR 97205
503.719.6667

Passengers comfort. The flight attendant never asked a single passenger to change seats to reasonably accommodate Plaintiff.

34.

When Plaintiff landed in Dallas, Texas. She checked into her hotel and called a crisis line. She was experiencing a heightened PTSD panic attack and feeling suicidal from the treatment she received from American Airlines.

## FIRST CLAIM FOR RELIEF
NEGLIGENCE

35.

Plaintiff restates and incorporates by reference paragraphs 1-34, inclusive.

36.

Defendant and their employees, agents, representatives owed a duty to Plaintiff to use reasonable care in reasonably accommodating Plaintiff's disability and service dog subsequent to American Airlines having timely notice that Plaintiff was in need of a reasonable accommodation.

37.

On November 1, 2016, Defendant breached its duty by failing to take reasonable steps to reasonably accommodate Plaintiff and her service dog, failing to follow their own policies and procedures for reasonably accommodations, and by failing to reasonably accommodate Plaintiff and her service dog. As a result, discriminated against Plaintiff due to her disability (PTSD) and need for reasonable accommodations.

38.

The breach of duty was the actual, direct and proximate cause of harms and damages to Plaintiff in the form of pecuniary loss, emotional distress, and pain and suffering. All of which were foreseeable as consequences of Defendant's acts and/or omissions.

39.

As a direct and proximate result of Defendant refusing to reasonably accommodate Plaintiff, Plaintiff experienced shot to her nervous system, incurred expenses and losses, and continues to suffer emotional harm and injury.

**SECOND CLAIM FOR RELIEF**
NEGLIGENCE PER SE

40.

Plaintiff restates and incorporates by reference paragraphs 1-34, inclusive.

41.

On November 1, 2016, Defendant was at all material times under a duty to exercise reasonable care in the treatment and handling of Plaintiff when she arrived at American Airlines ticket counter and requested her noticed reasonable accommodation; and again, when she attempted to receive reasonable accommodations at the boarding gate. Because Plaintiff has a disability (PTSD), Defendant, had a duty to provide her with reasonable accommodations as she attempted travel with her service dog in Portland, Oregon. The standard of care with which Defendant was required to treat Plaintiff is codified by 49 U.S.C Section 41705, and 14 CFR Section 382.1, et. Seq. (The Air Carrier Access Act).

42.

Plaintiff is not asserting a cause of action under the Air Carrier Access Act. Rather the Air Carrier Access Act sets forth the standard of care for Defendant's duties to Plaintiff. The breach of which gives rise to liability to Plaintiff under State law negligence claims.

43.

On November 1, 2016, Defendant breached its duty to Plaintiff by negligently refusing to reasonably accommodate Plaintiff with a seat appropriate for her and her service dog at the ticket

EFREM LAWRENCE LAW FIRM
1000 SW BROADWAY, SUITE 2400
PORTLAND, OR 97205
503.719.6667

counter, at the boarding gate, upon boarding, after boarding, and during flight because of her disability.

Plaintiff falls within the disabled class of people that the codified standards are designed to protect, and her harms, injuries, and damages are the type the statues are designed to protect.

44.

The breach of duty was the actual, direct and proximate cause of harms and damages to Plaintiff in the form of pecuniary loss, emotional distress, and pain and suffering. All of which were foreseeable as consequences of Defendant's acts and/or omissions.

45.

Defendant's violation of 49 U.S.C Section 41705, and 14 CFR Section 382.1, et. Seq. (The Air Carrier Access Act) constitutes negligence *per se* and creates a presumption of negligence.

46.

As a direct and proximate result of Defendant refusing to reasonably accommodate Plaintiff, Plaintiff experienced shock to her nervous system, incurred expenses and losses, and continues to suffer emotional harm and injury.

**THIRD CLAIM FOR RELIEF**
NEGLIGENT SUPERVISION

47.

Plaintiff restates and incorporates by reference paragraphs 1-34, inclusive.

48.

On information and belief, when engaged in the discriminatory conduct described, each of the individuals identified or referenced were acting as employees and/or agents of American Airlines.

49.

Defendant knew or reasonable should have known that each of the identified or referenced agents and/or employees was engaging in the discriminatory conduct alleged herein, and that the conduct would directly and proximately result in harms, injuries, and damages to Plaintiff.

50.

Defendant knew or reasonably should have known that failing to supervise their agents and/or employees regarding discrimination against Plaintiff and her service dog would directly and proximately result in monetary, physical, and emotional harms, and damages to Plaintiff.

51.

American Airlines had the authority and duty to supervise, prohibit, control, and/or regulate their agents and/or employees to prevent these acts from occurring.

52.

By failing to supervise, prohibit, control, and/or regulate said individual's acts, that individual's discrimination is ratification by Defendant.

53.

By failing to supervise, prohibit, control, and/or regulate the discriminatory conduct of their agents and/or employees, Defendant breached a duty owed to Plaintiff, which directly and proximately caused the harms and damages set forth herein. All of which were foreseeable as consequences of Defendant's acts or omissions.

54.

As a direct and proximate result of Defendant refusing to reasonably accommodate Plaintiff, Plaintiff experienced shot to her nervous system, incurred expenses and losses, and continues to suffer emotional harm and injury.

EFREM LAWRENCE LAW FIRM
1000 SW BROADWAY, SUITE 2400
PORTLAND, OR 97205
503.719.6667

## FOURTH CLAIM FOR RELIEF
NEGLIGENT AND/OR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

55.

Plaintiff restates and incorporates by reference paragraphs 1-34, inclusive.

56.

American Airlines had a duty not to refuse reasonable accommodations to Plaintiff that foreseeably caused Plaintiff to suffer emotional distress and mental anxiety.

57.

American Airlines knew or reasonably should have known that refusing to reasonably accommodate Plaintiff on November 1, 2016 would cause a reasonable person with PTSD to suffer physical and/or emotional injury resulting in severe emotional distress, garden variety emotional distress, incidental harms, injuries, and damages.

58.

As a direct and proximate result of Defendant refusing to reasonably accommodate Plaintiff, Plaintiff experienced shot to her nervous system, incurred expenses and losses, and continues to suffer emotional harm and injury.

## FIFTH CLAIM FOR RELIEF
VIOLATION OF TITLE III OF THE AMERICANS WITH DISABILITIES ACT

59.

Plaintiff restates and incorporates by reference paragraphs 1-34, inclusive.

60.

On November 1, 2016, Defendant violated Plaintiff's rights under Title III of the Americans with Disabilities Act by refusing to provide reasonable accommodations for Plaintiff and her service dog.

61.

At all material times, Defendant was a private entity that was primarily engaged in the business of transporting people. Specific transportation services provided by Defendant included ticketing, access from public lobbies of the airport to security checkpoints to terminals, and flight boarding.

62.

By refusing to provide reasonable accommodations to Plaintiff at the ticket counter, boarding gate, and on the plane, Defendant discriminated against Plaintiff on the basis of her disability.

63.

Defendant owned, leased, and/or operated the public ticketing area of the Portland International Airport, which at all material times was a place of public accommodation. Defendant discriminated against Plaintiff on the basis of her disability by excluding her from the full and equal enjoyment of the services, privileges, advantages, and/or accommodations of said place of public accommodation.

64.

Defendant's above described acts in violation of Title III of the ADA were motivated by discrimination due to Plaintiff's disability and need for her service dog on the November 1, 2016 flight, or reckless disregard for Plaintiff's rights.

65.

As a direct, proximate, and foreseeable consequence of Defendant's discrimination, Plaintiff suffered all the harms, injuries, and damages set forth throughout this Complaint, and demands compensation from Defendant for shock to her nervous system, incurred expenses and losses, emotional harm and injury, psychological harms, as well as reasonable attorneys' fees for brining

EFREM LAWRENCE LAW FIRM
1000 SW BROADWAY, SUITE 2400
PORTLAND, OR 97205
503.719.6667

this claim, all expenses of litigation, and punitive damages sufficient to prevent Defendant from engaging in similar misconduct in the future.

66.

Plaintiff also requests injunctive relief in the form of an Order requiring Defendant to train their employees and agent to follow applicable law and their own procedures regarding persons with disabilities and traveling with Services Animals, and to treat disabled persons traveling with Service Animals in a manner that is fair and non-discriminatory.

## JURY DEMAND FOR RELIEF

Plaintiff demands a jury trial on all claims and issues to the extent allowed under the law.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff requests the following judgments and relief according to proof:

    A.    As a direct and proximate result of Defendants' actions, Plaintiff has suffered general damages in the form legally known as "garden variety" emotional distress such that a reasonable person under similar circumstances would suffer and request an award of compensatory damages in an amount to be determined by a jury;

    B.    Plaintiff seeks reasonable compensation for loss of enjoyment of life, stigma, and damage to reputation in an amount to be determined by a jury;

    C.    Plaintiff seeks special damages and/or liquidated damages for the entire purchase of the subject ticket, plus interest at a reasonable rate not less than 8% per annum;

    D.    Plaintiff seeks punitive damages based on Defendant's willful, malicious, intentional, and deliberate acts, including ratification, condonation and approval of said acts to be determined by a jury;

EFREM LAWRENCE LAW FIRM
1000 SW BROADWAY, SUITE 2400
PORTLAND, OR 97205
503.719.6667

E.   Plaintiff also seeks equitable relief including a permanent injunction enjoining Defendants from engaging in any illegal practice which discriminates on the facts as alleged in this Complaint;

F.   Plaintiff also seeks reasonable attorney's fees and all costs of litigation in an amount to be proven at trial;

G.   For prejudgment and post-judgment interest as appropriate and allowed by law;

H.   All such other relief as this Court may deem proper.

Dated: September 11, 2018          **E.L. LAW FIRM**

/s/ Efrem Lawrence

Efrem Lawrence, OSB #160471
efrem@lawrencelegalfirm.com
Tel. 503-719.6667
Attorney for Plaintiff