IN THE UNITED STATES DISTRICT COURT

FOR THE DIVISION OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| D.E., an individual<br><br>    Plaintiff,<br><br>  v.<br><br>AMERICAN AIRLINES, a Corporation, and DOES 1-25, inclusive<br><br>    Defendants. | Case No.: 3:18-cv-01649-BR<br><br>**FIRST AMENDED COMPLAINT**<br><br>1. Negligence/Negligence Per Se<br>2. Intentional Infliction Emotional Distress<br>3. Negligent Infliction Emotional Distress<br><br>**JURY TRIAL DEMANDED** |

NOW COMES, Plaintiff D.E. for claims of relief against Defendant and Does 1-25 inclusive. Plaintiff request that the initials D.E. be used in lieu of full name for confidentiality purposes. Plaintiff is a victim of domestic abuse and requires privacy protection for safety reasons. Plaintiff complains and alleges as follows:

PAGE 1 – FIRST AMENDED COMPLAINT AND JURY TRIAL DEMAND

EFREM LAWRENCE LAW FIRM
1000 SW BROADWAY, SUITE 2400
PORTLAND, OR 97205
503.719.6667

## JURISDICTION, VENUE, AND PARTIES

1.

This court has subject matter jurisdiction under the provision of Title 28, United States Code Section 1332, in that this suit is a civil action between citizens of different States where the matter and actual controversy exceeds the value of $75,000.00, exclusive of interest and costs.

2.

Venue is appropriate in this court pursuant to Title 28, United States Code, Section 1391(b)(2), because a substantial part of the events or omissions giving rise to the claim occurred in the Multnomah County, Oregon; and/or pursuant to United States Code, Section 1391(c)(2) because Defendant(s), and each of them, are statutorily considered to be residents of the State of Oregon; are subject to personal jurisdiction in Oregon; and have sufficient contacts with Oregon including conduction continuous business in this state.

3.

Defendant(s), and each of them, made a contract with Plaintiff to be performed in whole or in part in the State of Oregon, and routinely operate flights into and out of Portland, Oregon/ Portland International Airport. Defendant's contacts with the State of Oregon were deliberate and purposeful, and Plaintiff's claims arise from those contacts, such that exercise of personal, specific and/or general, jurisdiction over the Defendant(s) in the state of Oregon is consistent with traditional notions of fair play and substantial justice.

4.

Upon information and belief, at all times relevant to this matter, American Airlines had the right to control the work of its employees and/or agents regarding American Airlines treatment of Plaintiff, fulfillment of duties owed to Plaintiff, protection of Plaintiff's rights and fulfillment of Plaintiff's contract to fly from Portland, Oregon to Dallas, Texas and back to

PAGE 2 – FIRST AMENDED COMPLAINT AND JURY TRIAL DEMAND

EFREM LAWRENCE LAW FIRM
1000 SW BROADWAY, SUITE 2400
PORTLAND, OR 97205
503.719.6667

Portland, Oregon; the right to prescribe and furnish the details of the kind and character of the work to be done regarding American Airlines treatment of Plaintiff, fulfillment of duties owed to Plaintiff, protection of Plaintiff's rights and fulfillment of Plaintiff's contract to fly from Portland, Oregon to Dallas, Texas and back to Portland, Oregon; the right to supervise and inspect the work regarding American Airlines employees and/or agents treatment of Plaintiff, fulfillment of duties owed to Plaintiff, protection of Plaintiff's rights and fulfillment of Plaintiff's contract to fly from Portland, Oregon to Dallas, Texas and back to Portland, Oregon; the right to direct the details of the manner in which the was to be done regarding American Airlines employees and/or agents treatment of Plaintiff, fulfillment of duties owed to Plaintiff, protection of Plaintiff's rights and fulfillment of Plaintiff's contract to fly from Portland, Oregon to Dallas, Texas and back to Portland, Oregon; and other non-enumerated rights.

## STATEMENT OF FACTS

By reference, each of the preceding paragraphs are adopted and made part of this section as if fully incorporated herein.

5.

In August 2016, Plaintiff applied for a Field Interviewer position with Westat to work on the Population Assessment of Tobacco and Heath (PATH) study. PATH is a longitudinal health study sponsored by the Food and Drug Administration (FDA) and the National Institute of Health (NIH).

///

///

EFREM LAWRENCE LAW FIRM
1000 SW BROADWAY, SUITE 2400
PORTLAND, OR 97205
503.719.6667

6.

The PATH study Field Interviewer position required away from home training in Dallas, Texas. Plaintiff was scheduled to leave Portland, Oregon for training on November 1, 2016 to Dallas, Texas and return on November 8, 2016.

7.

In 2011, Plaintiff was diagnosed with Post Traumatic Stress Disorder (PTSD) as a result of twenty years of domestic violence. November 21, 2013, City Dog Country Dog Training certified that Plaintiff's service dog successfully completed a Public Access test conducted in Portland, Oregon. Because Plaintiff was traveling for eight days, her service dog was needed.

8.

At all material times, Plaintiff's service dog was a "Service Animal" under the Americans with Disability Act ("ADA"); not an "Emotional Support Animal" or "Psychiatric Support Animal."

9.

On October 21, 2016, the representative for Westat travel made Plaintiff's travel arrangements in pertinent part as follows: American Airlines, Flight 2472 on November 1, 2016 departing Portland International Airport (PDX) at 7:30am with extra leg room for her service dog. The seat number was 9A.

10.

Prior to and at the time of the events that give rise to Plaintiff's claims, American Airlines website states that Service Animals are welcomed on flights. There are no additional charges for service animals traveling in the cabin. It further states that service animals cannot block the aisle.

11.

After Plaintiff's flights were booked, she contacted her doctor to complete the American Airlines service dog request documents.

12.

On October 24, 2016, Plaintiff's primary care physician, Dr. Hamlett, signed an American Airlines Psychiatric Service Animal request form for her November 1, 2016 and November 8, 2016 flights.

13.

On October 27, 2016, Plaintiff submitted both American Airlines Psychiatric Service Animal request forms to American Airlines which satisfied the 72-hour advanced notice to transport any Service Animal in the airplane cabin.

14.

On October 27, 2016, Plaintiff called Transportation Security Administration (TSA) Cares and explained that she would be traveling on November 1, 2016 and needed accommodations while navigating security with her service dog. TSA PDX responded quickly. Plaintiff received an email on October 28, 2016 confirming her request for November 1, 2016 accommodations. The TSA agent, Aarin McCarthy, suggested Plaintiff arrive at 5:30am for her 7:30am flight and call TSA Cares upon arriving at the airport.

15.

On October 27, 2016, Plaintiff contacted American Airlines main customer service number and spoke to a representative named Lori. Plaintiff requested that Special Services contact her to discuss and arrange reasonable accommodations. She also sent an email to sacesk.sro@as.com which included the signed American Airlines Psychiatric Service Animal request forms. Because Plaintiff did not want to prejudice herself by waiting for a call from Special Services, she initiated the call and spoke with employee RD6. During this call, Plaintiff identified herself as having a disability.

Plaintiff explained to RD6 that she needed reasonable accommodations for her service animal with a bulkhead window seat or another seat with extra leg room that would accommodate her and her service dog. RD6 stated that her current seat, 9B, would not provide additional leg room. Then, RD6 stated he would put in a request for seat 7A, a bulkhead/window seat, to provide room for Plaintiff and her service dog. RD6 instructed Plaintiff to get her seat at the ticket counter on the day of the flight while checking in. RD6 stated that all reasonable accommodation documentation was available and ready for the ticket agent. Based on the conversation with RD6, Plaintiff reasonably believed that she completed the necessary steps to put American Airlines on notice and obtain a reasonable accommodation for November 1, 2016.

16.

On October 31, 2016, Plaintiff checked-in online. Plaintiff packed a separate bag for her service dog which included a week's worth of food, toys, leashes, poop bags, treats and treat pouches, bowls, blankets, bedding, and allergy medicine. Plaintiff's service dog also needed an inflight back pack which included service dog documents, poop bags, travel bowls, two Kongs packed with food to be consumed on the plane, a grey pad to put on the airplane floor, a towel, treats, back up leash and harness, and anxiety medicine for the flight. Plaintiff's stow away luggage weighed approximately 150 pounds. Her carry-on luggage weighed approximately 50 pounds.

17.

On November 1, 2016, Plaintiff and her service dog were dropped off at PDX near pet relief. Plaintiff was toting roughly 200 pounds of luggage but was able to escort her service dog to pet relief. Plaintiff's service dog was able to relieve himself.

//

//

18.

As instructed, Plaintiff called TSA to give notice that she arrived. She took the elevator up to the main ticketing floor and went to the American Airlines ticket counter. She expected to have reasonable accommodations waiting for her. When Plaintiff approached the American Airlines ticket counter, she was met by a young female ticket agent. Plaintiff told the ticket agent that she already made arrangement through Special Services which employee RD6 documented reasonable accommodations for seat 7A.

19.

The female ticket agent stated that she did not care about disability accommodations, the need for a Special Care Assistant, and the only seat she was assigning Plaintiff was original seat 9B.

20.

Plaintiff was told that American Airlines would not make any changes to paying customers seats to accommodate her. Plaintiff was getting extremely stressed because she realized that the ticket agent was not going to afford her any reasonable accommodations.

21.

Plaintiff asked to speak with a supervisor. A middle-aged woman believed to be of Hispanic origin came to speak with Plaintiff. She was the supervisor. The supervisor said American Airlines does not have to assist Plaintiff. The supervisor clearly and concisely refused to assist and told Plaintiff to take it up with the gate agent.

22.

Plaintiff was extremely stressed but made her to security in hopes of resolving the issue at the gate. TSA Cares was expecting her. The TSA agent took Plaintiff and her service dog expeditiously through security.

23.

Once Plaintiff arrived at the gate, she waited for a gate attendant. Unfortunately for Plaintiff, the gate attendants where the original young female ticket agent and supervisor. They again stated that reasonable accommodations would not be given. Plaintiff stated that American Airlines was violating disability laws. They smirked and laughed at Plaintiff and sent her away. Plaintiff stood at the gate for minutes trying to get a resolution.

24.

Plaintiff was in helpless panic as other passengers stared. She was emotionally crushed and humiliated by the conduct of American Airlines agents, who discriminated against her because of her disability and publicly shamed her. She moved to the right side of the gate counter and called American Airlines Special Assistance.

25.

A male employee answered Plaintiff's call to American Airlines Special Assistance. She expressed that the hostile ticket and gate agents would not accommodate her disability. Again, she was told that they could do nothing to assist. The male employee said Plaintiff needed to address it with the gate attendants.

26.

The boarding process begun. American Airlines continued to refuse reasonable accommodations to Plaintiff and her service dog. She was distraught and humiliated.

27.

Plaintiff went back to the gate counter. The standard answer to her reasonable accommodations request was that American Airlines would not ask paying customers to change their seat.

28.

Plaintiff was experiencing PTSD symptoms and profusely crying. Because flying requires her service dog to be medicated, he could not respond and assist Plaintiff.

29.

Plaintiff was out of options as the flight boarded. The American Airlines gate attendant decided to assign Plaintiff seat 7C, an isle seat. Plaintiff objected to having her service dog in an isle seat. She was told to take it or leave it. Again, American Airlines ticket agents stated that they would not ask paying non-disabled customers to change seats.

30.

Because Plaintiff needed to be in Dallas, Texas for training, she boarded the flight. Plaintiff was in a panic trying to figure out how she was going to get her service dog on the flight in an isle seat. Plaintiff did not want a stressed dog on a flight. She had worked diligently to put protocols in place to sooth her service dog during flights.

31.

Hoping that the flight crew would be more helpful, Plaintiff immediately explained to the onboard flight attendant that she was refused reasonable accommodations for her disability and service dog. The flight attendant stated that she was not going to ask a passenger to change seats since they paid for the seat.

32.

The flight attendant told Plaintiff that the kindness of another passenger would be the only way to get a seat change.

33.

Subsequently, the passenger assigned to seat 7A arrived. Plaintiff was frantic and begged him to change seats. He agreed. The passenger in seat 7B arrived. Plaintiff had no leg room in the one

by one-foot space that her and her service dog were crammed in. Eventually, the flight attendant asked seat 7B if she would like to relocate to seat 9F. The flight attendant offered 9F to the passenger as an accommodation to said passenger because the dog was inconveniencing Passengers comfort.  The flight attendant never asked a single passenger to change seats to reasonably accommodate Plaintiff.

34.

When Plaintiff landed in Dallas, Texas. She checked into her hotel and called a crisis line. She was experiencing a heightened PTSD panic attack and feeling suicidal from the treatment she received from American Airlines.

### FIRST CLAIM FOR RELIEF
NEGLIGENCE/NEGLIGENCE PER SE

35.

Plaintiff restates and incorporates by reference paragraphs 1-34, inclusive.

36.

Plaintiff is not asserting a cause of action under the Air Carrier Access Act. Rather the Air Carrier Access Act sets forth the standard of care for Defendant's duties to Plaintiff. The breach of which gives rise to liability to Plaintiff under State law negligence claims. The standard of care with which Defendant was required to treat Plaintiff is codified by 49 U.S.C Section 41705, and 14 CFR Section 382.1, et. Seq. (The Air Carrier Access Act).

37.

Defendant requires passengers with disabilities to provide 72-hour advanced notice and check-in one hour before the check-in time for the general public in order to receive an accommodation to transport a service animal.

38.

On October 27, 2016, Plaintiff made her initial request for reasonable accommodation leading up to her November 1, 2016 flight. Plaintiff called and emailed American Airlines and its Special Services Reservations Department. Plaintiff identified herself as a person with a disability. Plaintiff said she was traveling with American Airlines on November 1, 2016. Plaintiff said she had a service dog that would be traveling with her on November 1, 2016. Plaintiff stated that she needed a bulkhead window seat or a seat with extra leg room to accommodate her and her service dog. The call and email were more than 72 hours in advance of Plaintiff's flight. Plaintiff also checked-in online on October 31, 2016, well in advance of Defendant's one hour before the check-in time for the general public policy.

39.

Therefore, in accordance with 14 CFR 382.27(d)-(e), Defendant and its employees, agents, and representatives owed a duty to Plaintiff to provide the requested accommodation and clearly communicate Plaintiff's provided notice on-time to the people responsible for providing the requested accommodation.

40.

Defendant breached its duty by failing to provide Plaintiff's requested reasonable accommodation; by failing to ensure that reservations and other administrative systems communicated clearly and on-time Plaintiff's given notice to the people responsible for providing the requested accommodation, including but not limited to ticket counter agents and boarding gate agents.

41.

Defendant employee RD6 did not provide Plaintiff with a bulkhead seat or a seat with extra leg room on October 27, 2016, nor was the requested accommodation given at the ticket counter or boarding gate on November 1, 2016. Defendant's reservation and administration systems did not clearly communicate Plaintiff's request. This is evidenced by the fact that the ticket counter

agent or boarding gate agent couldn't locate such request in their systems on November 1, 2016. When Plaintiff arrived at the ticket counter on November 1, 2016, Defendant did not have a "blocked" seat assigned to Plaintiff, therefore, communication of her request was not on-time.

42.

In accordance with 14 CFR 382.81, Defendant and its employees, agents, and representatives owed a duty to Plaintiff to ensure that Plaintiff's request was recorded and properly transmitted to the personnel responsible for providing accommodations; and owed a duty to Plaintiff requiring that Defendant must, as Plaintiff requests, either provide a bulkhead seat or a seat other than a bulkhead seat.

43.

Defendant breached its duty when it did not record that, on October 27, 2016, Plaintiff requested a bulkhead window seat or a seat with extra leg room. This failure to record Plaintiff's initial request is evidenced by Defendants own records showing Plaintiff contacted Reservations on October 27, 2016 notifying Defendant of her service dog, the extra bag for her service dog, and need for a window seat. However, Defendant failed to document the most important portion of Plaintiff's initial request which was a bulkhead window seat or a seat with extra leg room.

44.

Defendant breached its duty by failing to transmit Plaintiff's October 27, 2016 request to personnel responsible for providing the accommodations, including but not limited to ticket counter agents and boarding gate agents. This failure is evidenced by the fact that on November 1, 2016, Plaintiff arrived at the ticket counter expecting her accommodations and the ticket agent and her supervisor had no reference of Plaintiff's request or new proper seat assignment. In addition, Plaintiff was forced to her gate with the original seat, 9B, just to find out that her request wasn't transmitted to the gate.

45.

Defendant breached its duty when its employee, RD6, failed to provide a bulkhead seat or other seat with extra leg room for Plaintiff and her service dog as she requested on the October 27, 2016 phone call. This breach continued through November 1, 2016, when Defendant failed to provide a bulkhead seat or other seat with extra leg room, as requested, at the ticket counter. The breach persisted when Defendant failed to provide a bulkhead seat or other seat with extra leg room at the gate on November 1, 2016.

46.

In accordance with 14 CFR 382.83, Defendant owed a duty to Plaintiff which requires that Defendant must assign a "blocked" seat to a passenger with a disability meeting one or more requirements of 14 CFR 382.81, who requests it, at the time the passenger initially makes the request.

47.

Defendant breached its duty because Plaintiff was a ticketed passenger with Post Traumatic Syndrome Disorder which is an Air Carrier Access Act recognized disability. On October 27, 2016, while on the phone with Defendant employee, RD6, Plaintiff self-identified that she had a disability and made her initial request for a bulkhead window seat or seat with extra leg room. However, at the time of her initial request, October 27, 2016, Defendant did not assign a "blocked" seat to Plaintiff. In fact, after Plaintiff made her initial request Defendant did not assign a "blocked" seat to Plaintiff from October 27, 2016 through November 1, 2016. Therefore, Defendant breached its duty to Plaintiff by failing to comply with 14 CFR 382.83.

48.

Further, in accordance with 14 CFR 382.11, Defendant had a duty to refrain from discriminating against any qualified individual with a disability, by reason of such disability.

EFREM LAWRENCE LAW FIRM
1000 SW BROADWAY, SUITE 2400
PORTLAND, OR 97205
503.719.6667

49.

Defendant breached its duty when its' employees failed to clearly communicated Plaintiff's provided notice on-time to the personnel responsible for providing the accommodation; when its employees failed to ensure Plaintiff's initial request was recorded and properly transmitted to the personnel responsible for providing the accommodation; and when its employees failed to assign a bulkhead seat or other seat with extra leg room, as requested, at the time of her initial request on October 27, 2016.

50.

Because Defendant's employees are trained on their responsibilities under the ACAA and how to fulfill their responsibility, employee RD6, On October 27, 2016, knew or should have known that Plaintiff was making a request for an accommodation to transport her service dog.

51.

He also knew or should have known that affirming to Plaintiff she was to be assigned seat 7A, a bulkhead window seat and to receive her ticket on November 1, 2016 at the ticket counter, but not recording or transmitting the request or new seat assignment, would lead to Plaintiff not being accommodated and accused of not requesting her accommodation within 24 hours prior to boarding. Resulting in discrimination against Plaintiff. Thus, RD6's conduct was discriminatory, due to her disability, in breach on 14 CFR 382.11.

52.

Plaintiff has filed a formal complaint with the Department of Transportation (DOT). The DOT is investigating potential statutory violations of 49 U.S.C Section 41705 and 14 CFR Section 382 (The Air Carrier Access Act). Such violation constitutes negligence Per Se and creates a presumption of negligence.

///

///

53.

Plaintiff suffers from a diagnosed disability; therefore, she falls within the class of persons that The Air Carrier Access Act is designed to protect.

54.

Plaintiff was discriminated against, embarrassed, frightened, grieved, shamed, humiliated, angered, disappointed, worried, and suffered triggering of her Post Traumatic Syndrome Disorder which are the types of harms, injuries, and damages The Air Carrier Access Act is meant to prevent.

55.

The breach of one or more duties was the actual, direct and proximate cause of harms and damages to Plaintiff in the form of pecuniary loss, emotional distress, and pain and suffering. All of which were foreseeable as consequences of Defendant's acts and/or omissions.

56.

As a direct and proximate result of Defendant's breach(es), as detailed above, Plaintiff experienced shock to her nervous system, incurred expenses and losses, and continues to suffer emotional harm and injury.

## SECOND CLAIM FOR RELIEF
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

57.

Plaintiff restates and incorporates by reference paragraphs 1-34, inclusive.

58.

After Plaintiff fulfilled Defendant's pre-check-in and check-in requirements, including making an initial request more than 72 hours prior to her November 1, 2016 flight, self-identifying herself as disabled, requesting a bulkhead seat or other seat with extra leg room, and checking-in more than one hour before boarding. Defendant's employees abused their position and/or actual

or apparent authority over Plaintiff by refusing, in a berating, extreme, abusive, and intolerable manner, to reasonably accommodate her in accordance with 14 CFR Section 382.

59.

Defendant's employees' conduct whether intentional or with reckless disregard of the high probability of causing emotional injury caused Plaintiff severe grief, fright, shame, humiliation, embarrassment, anger, disappointment, worry, and triggered her Post Traumatic Syndrome Disorder.

60.

As a direct, proximate, and foreseeable result, Plaintiff experienced and continues to suffer from severe emotional harm and injury.

### THIRD CLAIM FOR RELIEF
NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

61.

Plaintiff restates and incorporates by reference paragraphs 1-34, inclusive.

62.

In the alternative, Defendant has a duty to follow all guidelines codified in 14 CFR Section 382.

63.

Defendant breached its duty when its employees breached one or more standards of care set forth in 14 CFR Section 382, specifically 14 CFR 382.11, 14 CFR 382.27, 14 CFR 382.81, and 14 CFR 382.83 as described above.

64.

Defendant's employees' breach of one or more standard of care foreseeably caused Plaintiff grief, fright, shame, humiliation, embarrassment, anger, disappointment, worry, and triggered her Post Traumatic Syndrome Disorder.

65.

As a direct and proximate result of American Airlines negligence Plaintiff experienced and continues to suffer from emotional harm and injury.

## JURY DEMAND FOR RELIEF

Plaintiff demands a jury trial on all claims and issues to the extent allowed under the law.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff requests the following judgments and relief according to proof:

A. Plaintiff seeks general damages in an amount to be determined by a jury;

B. Plaintiff seeks special damages and/or liquidated damages for the entire purchase of the subject ticket, plus interest at a reasonable rate not less than 8% per annum;

C. Plaintiff seeks, upon motion, punitive damages to be determined by a jury;

D. Plaintiff also seeks equitable relief including a permanent injunction enjoining Defendants from engaging in any illegal practice which discriminates on the facts as alleged in this First Amended Complaint;

E. Plaintiff also seeks reasonable attorney's fees and all costs of litigation in an amount to be proven at trial;

F. For prejudgment and post-judgment interest as appropriate and allowed by law;

G. All such other relief as this Court may deem proper.

Dated: January 3, 2019                **E.L. LAW FIRM**

                                        /s/ Efrem Lawrence

                                      _____
                                      Efrem Lawrence, OSB #160471
                                      efrem@lawrencelegalfirm.com
                                      Tel. 503.719.6667
                                      Attorney for Plaintiff