# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **D.E.**, <br>         Plaintiff, <br><br> v. <br><br> **AMERICAN AIRLINES, INC.,** a corporation; and **DOES 1-25**, inclusive, <br><br>         Defendants. | Case No. 3:18-cv-01649-IM <br><br> **OPINION AND ORDER** |

Efrem Lawrence, EFREM LAWRENCE LAW FIRM, 5 Centerpointe Dr., Suite #400, Lake Oswego, OR 97035. Attorney for Plaintiff.

Caryn Geraghty Jorgensen, John Fetters, and Brett MacIntyre, STOKES LAWRENCE, P.S., 1420 Fifth Avenue, Suite 3000, Seattle, WA 98101. Attorneys for Defendant.

**IMMERGUT, District Judge.**

      Plaintiff D.E. brings this action against Defendants American Airlines, Inc. ("American Airlines") and Does 1 through 25, alleging claims of negligence, negligence per se, intentional infliction of emotional distress, and negligent infliction of emotional distress. ECF 16. Presently before this Court is Defendants' Motion for Summary Judgment on all claims. ECF 26. This Court held a hearing on Defendants' motion on February 19, 2020. At the hearing, Plaintiff conceded that her Second Claim for relief alleging intentional infliction of emotional distress

PAGE 1 – OPINION AND ORDER

should be dismissed. After considering all of the pleadings and arguments of counsel, this Court finds that there are no material facts in dispute and that Defendants have not breached the standard of care set forth in the Air Carrier Access Act ("ACAA") and its implementing regulations. Therefore, Plaintiff's negligence claims fail as a matter of law. In addition, Plaintiff has not opposed Defendants' motion for summary judgment on the claim for intentional infliction of emotional distress. For these reasons and the reasons that follow, this Court grants Defendants' motion.

## STANDARDS

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001). Although "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment," the "mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and quotation marks omitted).

## BACKGROUND

For the purpose of this motion, the following facts are undisputed except where otherwise noted. Plaintiff D.E. sometimes travels with a psychiatric service animal when traveling for

work. *See* ECF 25 at ¶ 1. On October 21, 2016, a travel agent for Plaintiff's employer booked a ticket for Plaintiff to travel on a November 1, 2016 flight with Defendant American Airlines from Portland, Oregon to Dallas, Texas. *Id.* Plaintiff advised the travel agent booking the flight that she required extra leg room because she would be traveling with a psychiatric service animal. *Id.* When making the reservation, the travel agent selected seat 9B, a seat with extra leg room, for Plaintiff. *Id.* at ¶ 2; Gould Decl., ECF 27 at ¶ 4. That seat ordinarily requires payment of additional fees, but the seat was provided to Plaintiff for no additional charge as an accommodation to Plaintiff. ECF 25 at ¶ 2; Gould Decl., ECF 27 at ¶ 4.

Four days before her flight, on October 27, 2016, Plaintiff called American Airlines' Reservation Department and requested changing her seat assignment to a bulkhead[1] window seat. ECF 25 at ¶ 3. Plaintiff spoke with Laureen Waterman, a reservations agent, who documented the call in Plaintiff's reservation history. *Id.* at ¶¶ 3–4. Ms. Waterman placed Plaintiff's reservation in the queue to be contacted by American Airlines' Special Assistance Coordinators ("SAC" or "SAC Desk"). *Id.* The SAC Desk is composed of specialized reservation agents who manage requests for passengers with disabilities. *Id.* at ¶ 5. The SAC Desk controls access to seats that have been "blocked" by the airline so that they are available to accommodate passengers with disabilities when timely requested. *Id.* On that same day, while awaiting further contact, Plaintiff sent the SAC Desk an email with a signed copy of American Airlines' "Emotional Support/Psychiatric Service Animal Authorization Form" and a handwritten note requesting a call to "further discuss accommodations needed." *Id.* at ¶ 6.

---

[1] A bulkhead seat is a seat immediately behind a wall or divider that separates sections of the plane.

The parties had no additional contact until the day before Plaintiff's flight, October 31, 2016. The SAC Desk called Plaintiff and left a voicemail at 9:46 a.m., Pacific time. *Id.* at ¶ 7. After checking-in for her flight with seat assignment 9B, Plaintiff called back the SAC desk at approximately 11:00 a.m. and spoke with agent Georgeanne Rivera. *Id.* at ¶ 8; *see* ECF 37-3 at 3–4. Plaintiff discussed her request for a bulkhead window seat with Ms. Rivera but was informed that only local airport personnel can change a passenger's seat assignment once a passenger has checked-in for a flight. Rivera Decl., ECF 30 at ¶ 4; Gould Decl., ECF 27 at ¶ 7. Therefore, Plaintiff was unable to change her seat assignment during that call. Plaintiff then spoke with a supervisor who recorded notes stating that he advised Plaintiff that her concerns regarding her dog were documented and to "[check-in] at ATO for outbound to get bulkhead window seat she [requires]." ECF 37-3 at 3. The parties dispute whether Plaintiff was informed that she had been assigned to a bulkhead window seat—seat 7A—during this phone call. *Compare* ECF 26 at 5 *with* ECF 37 at 7 (Plaintiff "testified that during this phone call she [was] specifically assigned seat 7A.").

Plaintiff arrived at the airport on the day of her flight, November 1, 2016, between 5:45 and 6:00 am. ECF 25 at ¶ 10. She proceeded to the ticket counter, where a customer service agent informed her that her seat assignment was 9B, and the agent was unable to reassign her seat to 7A because the seat was assigned to another passenger. *Id.*; ECF 37-2 at 11, l. 2–14, l. 14. The ticket agent was rude when she explained that she needed the accommodation for her disability. ECF 37-2 at 12, l. 1–12. The agent told Plaintiff, "I don't care about these disability laws." *Id.* at l. 11–12. While at the ticket counter, an American Airlines employee offered Plaintiff the opportunity to be reassigned to 7C, a bulkhead aisle seat, which Plaintiff declined. Sumpter Decl., ECF 36 at ¶ 4. Plaintiff was also offered seat 18F, a window seat, which she also

declined. *Id.*; *see* ECF 25 at ¶ 10. Plaintiff then continued through security and spoke with the agents at the gate. ECF 25 at ¶¶ 10–11. At the gate, Plaintiff was reassigned to seat 7C, a bulkhead aisle seat, and she boarded the plane. *Id.* at ¶ 11. After boarding the plane, Plaintiff asked the passenger assigned to seat 7A, the bulkhead window seat, if he would switch with her and he agreed. *Id.* at ¶ 12. Plaintiff then moved to seat 7A. *Id.* An American Airlines employee asked the passenger assigned to seat 7B whether she would relocate to another row to allow additional space for Plaintiff and her service animal. Garland Decl., ECF 32 at ¶ 3. The passenger consented, leaving the seat next to Plaintiff empty for the duration of the flight. *Id.*; ECF 25 at ¶ 13. No one at American Airlines ever questioned Plaintiff's right to bring her service animal onto the aircraft. ECF 25 at ¶ 15.

## DISCUSSION

### A. Negligence and Negligence Per Se

To prove a negligence claim under Oregon law, Plaintiff must show that (1) Defendants owed her a duty, (2) they breached that duty, and (3) the breach was the cause in fact of some legally-cognizable damage to Plaintiff. *Cain v. Bovis Lend Lease, Inc.*, 817 F. Supp. 2d 1251, 1279 (D. Or. 2011) (citing *Brennan v. City of Eugene*, 285 Or. 401, 405 (1979)). For a claim of negligence per se, Plaintiff must establish: (1) "defendants violated a statute or rule"; (2) "plaintiff was injured as a result of that violation"; (3) "plaintiff was a member of the class of persons meant to be protected by the statute or rule"; and (4) "the injury plaintiff suffered is of a type that the statute or rule was enacted to prevent." *Buoy v. Soo Hee Kim*, 232 Or.App. 189, 204 (Or. Ct. App. 2009). In the present case, Plaintiff must prove the same breach of duty—failing to comply with ACAA regulations—to establish a claim for negligence or negligence per se. As explained below, Defendants complied with the relevant ACAA regulations and provided the

standard of care that air carriers must afford disabled passengers who travel with service animals. For this reason, Plaintiff's claims for negligence and negligence per se fail as a matter of law.

### 1. Duty of Care Under the Air Carrier Access Act

The ACAA prohibits air carriers from "discriminating against an otherwise qualified individual" because that "individual has a physical or mental impairment that substantially limits one or more major life activities." 49 U.S.C. § 41705(a)(1). The Federal Aviation Act authorizes the Secretary of Transportation to promulgate regulations implementing the ACAA. *Nat'l Fed. of the Blind v. United Airlines Inc.*, 813 F.3d 718, 730 (9th Cir. 2016); 49 U.S.C. § 40113(a). "Pursuant to that authorization, the Department of Transportation ("DOT") issued implementing regulations, codified at 14 C.F.R. Part 382, specifying the detailed requirements that airlines must meet to comply with the ACAA." *Gilstrap v. United Air Lines, Inc.*, 709 F.3d 995, 1000 (9th Cir. 2013). The ACAA does not provide a private right of action. *Segalman v. Sw. Airlines Co.*, 895 F.3d 1219, 1228 (9th Cir. 2018). However, the ACAA and its implementing regulations may establish the standard of care or duty for state tort claims where there are "pervasive regulations" in an area due to field preemption. *Gilstrap*, 709 F.3d at 1004 (quoting *Martin ex. Rel. Heckman v. Midwest Express Holdings, Inc.*, 553 F.3d 806, 810–11 (9th Cir. 2009)); *see also Arizona v. United States*, 567 U.S. 387, 399 (2012) ("States are precluded from regulating conduct in a field that Congress, acting within its proper authority, has determined must be regulated by its exclusive governance."). Conversely, "[i]n areas without pervasive regulations or other grounds for preemption, the state standard of care remains applicable." *Martin*, 555 F.3d at 811.

Both Plaintiff and Defendants contend that the ACAA and its implementing regulations set the standard of care that air carriers must provide to disabled persons traveling with service animals. ECF 26 at 9; ECF 37 at 11. However, the Ninth Circuit has not yet considered whether

PAGE 6 – OPINION AND ORDER

the ACAA regulations preempt state law duties of care in this context. Therefore, this Court must first consider whether the ACAA regulations delineating the allowances that airlines must provide for passengers traveling with service animals preempt state law and set the standard of care.

Congress has the power to expressly or impliedly preempt state law. U.S. Const. Art. VI, cl. 2; *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 516 (1992). For preemption to occur, Congress' intent to preempt state law must be evident through the statute's express language or "implicitly contained in its structure and purpose." *Id.* Implied preemption exists "if federal law so thoroughly occupies a legislative field 'as to make reasonable the inference that Congress left no room for the States to supplement it.'" *Id.* at 516 (quoting *Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta et al.*, 458 U.S. 141, 153 (1982)). Where Congress has delegated authority to an agency to promulgate regulations to carry out the purpose of a statute, the court must consider whether the regulations "evidence a desire to occupy a field completely." *R.J Reynolds Tobacco Co. v. Durham Cty., N.C.*, 479 U.S. 130, 149 (1986). The essential inquiry for field preemption is whether the regulations are so pervasive that "any state regulation within the same field will necessarily interfere with the federal regulatory scheme." *Nat'l Fed. of the Blind*, 813 F.3d at 734.

The Ninth Circuit has developed a two-step process for determining whether field preemption exists for an area regulated by the ACAA. *Id.* First, the court must delineate the pertinent area of the regulations with specificity. *Id.*; *Martin*, 555 F.3d at 811. Second, the court must survey the density, detail, and scope of the regulatory framework in that field. *Nat'l Fed. of the Blind*, 813 F.3d at 734. This Court uses that framework for its analysis.

The regulations at issue in this case evidence Congressional intent to preempt state law. First, the present case concerns the regulation of seating accommodations for passengers traveling on airplanes with service animals—14 C.F.R. §§ 382.27, 382.81, and 382.83. Those regulations detail the accommodations that must be provided when requested by passengers who self-identify to the air carrier as "having a disability specified in this section and the type of seating accommodation in question exists on the particular aircraft." 14 C.F.R. § 382.81.

Second, the regulations are exhaustive and comprehensively regulate the manner which airlines must reserve, record, and provide seating accommodations for disabled passengers with service animals. The regulations specify that once a passenger self-identifies themselves to the carrier, the airline "must ensure that the information [regarding the seating accommodation] is recorded and properly transmitted to personnel responsible for providing the accommodation." *Id.* The ACAA also requires that an airline provide "as the passenger requests, either a bulkhead seat or a seat other than a bulkhead seat" to disabled passengers traveling with a service animal. *Id.* at § 382.81(c). If an air carrier provides seat assignments to passengers in advance of the day of the flight, the carrier must comply with seating accommodations for disabled passengers traveling with service animals by either "blocking" seats or designating seats as "priority seats" for disabled passengers. *Id.* at § 382.83(a). For carriers who use the "block" method to comply with ACAA requirements, the regulations require the airline to block an "adequate number of seats . . . to provide the seating accommodations required by § 382.21." *Id.* at § 383.83(a)(1). In addition, the airline must follow the following directives:

> (i) You must not assign these seats to passengers who do not meet the criteria of § 382.81 until 24 hours before the scheduled departure of the flight.
>
> (ii) At any time up until 24 hours before the scheduled departure of the flight, you must assign a seat meeting the requirements of this section to a passenger with a disability meeting one or more of the

PAGE 8 – OPINION AND ORDER

> requirements of § 382.81 who requests it, at the time the passenger initially makes the request.
>
> (iii) If a passenger with a disability specified in § 382.81 does not make a request at least 24 hours before the scheduled departure of the flight, you must meet the passenger's request to the extent practicable, but you are not required to reassign a seat assigned to another passenger in order to do so.

*Id.*

For these reasons, this Court finds that the ACAA regulations are pervasive and intended to occupy the field of seating accommodations for passengers with disabilities traveling with service animals. Therefore, the ACAA regulations establish the standard of care that Defendants owed to Plaintiff when blocking, reserving, and providing seating accommodations.

### 2. Alleged Breaches of the Duty of Care

Plaintiff alleges that Defendant American Airlines breached its duty of care by failing to: (1) block an adequate number of seats; (2) assign a seat meeting the regulatory requirements at the time of initial request; (3) ensure information regarding the seat request was properly transmitted; (4) assign Plaintiff a window seat on October 27th; and (5) provide reasonable accommodations. Each alleged breach will be addressed in turn.

First, Plaintiff alleges that Defendant American Airlines breached its duty of care by failing to block an adequate number of seats for seating accommodations. ECF 37 at 11–12. American Airlines uses a blocking method, as opposed to a priority method, to reserve seats for disability accommodations. Air carriers that use blocking to set aside seats for disability accommodations are required to block an adequate number of seats to provide the accommodations set forth in ACAA section 382.81. 14 C.F.R. § 382.83. Section 382.81 requires that air carriers provide "either a bulkhead seat or a seat other than a bulkhead seat" to passengers with a disability traveling with a service animal. 14 C.F.R. § 382.81(c). Section

382.81 does not, however, require that air carriers block bulkhead window seats. *See id.* For Plaintiff's flight, American Airlines blocked two non-window bulkhead seats—7D and 7E. Gould Decl., ECF 27 at ¶ 5. Although not a bulkhead *window* seat, Plaintiff received a bulkhead seat assignment at 7C before boarding the flight. ECF 25 at ¶ 11. Because a bulkhead seat was available and provided to Plaintiff, Defendant American Airlines did not breach its duty of care for blocking an insufficient number of seats.

Second, Plaintiff argues that Defendant American Airlines failed to assign her a seat meeting the requirements of section 382.81 when she initially made the request as required by the ACAA regulations. ECF 37 at 12–13. Plaintiff asserts that American Airlines should have assigned her a bulkhead window seat when she requested the accommodation on October 27, 2016. *Id.* at 13. However, as previously stated, the ACAA does not require that air carriers provide bulkhead window seats as an accommodation. *See* 14 C.F.R. § 382.81(c). Moreover, Plaintiff received an accommodation at the request of her travel agent during the initial booking on October 21st. ECF 25 at ¶¶ 1–2. When the travel agent booked the flight, Plaintiff received a seat assignment with extra leg room as requested—seat 9B—at no additional cost to Plaintiff. Gould Decl., ECF 27 at ¶ 4. Plaintiff called the airline six days later to seek reassignment to a bulkhead window seat. ECF 25 at ¶ 3. Thus, Defendant American Airlines did not breach its duty to provide a "bulkhead seat or seat other than a bulkhead seat" for Plaintiff when the accommodation was initially requested.

Third, Plaintiff asserts that Defendants failed to properly record and transmit information regarding Plaintiff's requested accommodation as required by section 382.81. ECF 37 at 14–15. The ACAA regulations require air carriers to ensure that information regarding accommodation requests is recorded and transmitted to the personnel responsible for providing the

accommodation. 14 C.F.R. § 382.81. Plaintiff argues that the SAC desk failed to ensure that a bulkhead window seat was blocked or transmit information regarding blocking a bulkhead window seat. ECF 37 at 15. Because Defendants were under no duty to provide a bulkhead window seat to Plaintiff, they were similarly under no duty to record or transmit that information.

Fourth, Plaintiff argues that Defendants breached their duty of care by failing to assign her an ordinary window seat on October 27, 2016. ECF 37 at 16. However, Plaintiff admits that she only requested a *bulkhead* window seat not an ordinary window seat on October 27, 2016. *Id*. Air carriers are only required to provide the seating accommodations to passengers as requested. *See* 14 C.F.R. § 382.81. Defendants cannot breach a duty of care for failing to provide an accommodation that was not requested.[2]

Finally, Plaintiff contends that Defendants had an obligation to provide her the reasonable accommodations she requested for traveling with her service dog, citing 14 C.F.R. § 382.27(d)). ECF 37 at 18. Section 382.27 requires air carriers to provide certain accommodations for passengers with disabilities, including the transportation of a service animal in the cabin. 14 C.F.R. § 382.27(d). Defendants complied with this regulation by permitting Plaintiff's service animal to travel in the cabin. In addition, Plaintiff concedes that her right to bring her service animal in the cabin was not questioned by Defendants. *See* ECF 25 at ¶ 15.

Furthermore, to the extent that Plaintiff argues that Defendants owe a duty of care beyond the accommodations specifically listed in the ACAA, that argument fails as a matter of law. The

---

[2] Plaintiff asserts that Defendants have taken the position that she requested an ordinary window seat rather than a bulkhead window seat during the October 27th phone call. However, Defendants agree that Plaintiff asked for a bulkhead window seat at that time. *See* ECF 26 at 3 (citing Joint Statement of Agreed Facts, ECF 25 at ¶ 3). On November 1, 2019, Plaintiff was offered an ordinary window seat (18F) but declined it. Sumpter Decl., ECF 36 at ¶ 4.

standards defined by the ACAA regulations preempt any different or higher standard of care that air carriers may owe to passengers for pervasively regulated activities. *Gilstrap*, 709 F.3d at 1007. Thus, Defendants will not be held liable for failing to provide services that are not specified in the ACAA regulations. *See id.* at 1007 (stating an airline cannot be held liable for failing to provide services beyond those required by the ACAA regulations when the ACAA regulations preempt state law standards of care).

Plaintiff has failed to establish that Defendants breached the duty of care owed to Plaintiff. Accordingly, this Court grants summary judgment to Defendants on Plaintiff's claims for negligence and negligence per se.

**B. Intentional and Negligent Infliction of Emotional Distress**

Plaintiff also brings claims for intentional infliction of emotional distress ("IIED") and negligent infliction of emotional distress ("NIED"). ECF 16 at 15–17. At oral argument, Plaintiff conceded that she does not oppose summary judgment for the claim of IIED. In addition, Plaintiff abandoned her claim for IIED by failing to raise the claim in her opposition to summary judgment. *See Jenkins v. Cty. of Riverside*, 398 F.3d 1093, 1095 n.4 (9th Cir. 2005) (finding claims abandoned when not addressed in opposition to motion for summary judgment); *Bolbol v. City of Daly City*, 754 F.Supp.2d 1095, 1115 (N.D. Cal. 2010) (granting summary judgment where plaintiff failed to address the issue in opposition brief). Therefore, this Court grants summary judgment on the IIED claim.

NIED is a form of common law negligence claim where a plaintiff seeks damages for emotional rather than physical harm. *Paul v. Providence Health Sys.*, 351 Or. 587, 597 (2012). Oregon allows a plaintiff to recover damages for NIED when she has established a defendant negligently caused her to: (1) suffer a physical injury, or (2) suffer foreseeable, serious emotional distress coupled with the infringement of "some legally protected interest." *Philibert v. Kluser*,

360 Or. 698, 702 (2016) (citing *Norwest v. Presbyterian Intercommunity Hosp.*, 293 Or. 543, 557 (1982)). In addition, Plaintiff must show that the infringement of that legal interest is "of sufficient importance as a matter of public policy to merit protection from emotional impact." *Lockett v. Hill*, 182 Or.App. 377, 380 (2002) (quoting *Hilt v. Bernstein*, 75 Or.App. 502, 515 (1985), *rev. den.* 300 Or. 545 (1986)). That is because "[a]ny number of people may suffer emotional distress as the foreseeable result of a single negligent act." *Philibert*, 360 Or. at 703. Thus, foreseeability alone does not sufficiently limit the scope of liability. *Id.* at 704. Plaintiff has not submitted any evidence that she suffered a physical injury. Therefore, for her claim to proceed, she must establish that she suffered a violation of a legally protected interest.

In the context of a claim for NIED, a legally protected interest is "an independent basis of liability separate from the general duty to avoid foreseeable risk of harm." *Lockett v. Hill*, 182 Or.App. 377, 380 (2002) (quoting *Phillips v. Lincoln County School District*, 161 Or.App. 429, 433 (1999)). Legally protected interests may arise from statutory duties, special relationships, or rights under the common law. *See Shin v. Sunriver Preparatory School*, 199 Or.App. 352, 365 (2005) (NIED claim based on special relationship between surrogate parent and international student); *McEvoy v. Helikson*, 277 Or. 781, 785 (1977) (NIED claim based on lawyer's failure to follow a court order); *Macca v. General Telephone Co. of N.W.*, 262 Or. 414, 418 (1972) (NIED claim based on the right to be free from private nuisance). At oral argument, Plaintiff asserted that her NIED claim is based on her legally protected disability rights under the ACAA. Indeed, in some instances statutory rights for disabled persons have constituted an underlying legal interest for NIED claims. *See Boffoli v. Swalko,* No. 3:16-CV-01463-YY, 2018 WL 1701884, at *10 (D. Or. Jan. 22, 2018), *report and recommendation adopted*, No. 3:16-CV-01463-YY, 2018 WL 1585745 (D. Or. Mar. 30, 2018) (finding legally protected interest for NIED claim in

Oregon fair housing laws); *Rodriguez v. Montalvo*, 337 F. Supp. 2d 212, 216 (D. Mass. 2004) (recognizing that the plaintiff may succeed on NIED claim based on violations of Fair Housing Act). However, even assuming that ACAA disability rights constitute a legally protected interest for the purpose of NIED, Plaintiff's claim still fails. This Court has determined that Plaintiff's ACAA rights were not violated by Defendants' conduct as a matter of law. Therefore, Plaintiff has failed to establish that Defendants violated a legally protected interest, a necessary element for her NIED claim. Accordingly, this Court grants summary judgment on Plaintiff's claim for NIED.

## CONCLUSION

For these reasons, Defendants' Motion for Summary Judgment, ECF 26, is GRANTED. Because this Court grants Defendants' Motion for Summary Judgment, Plaintiff's Daubert Motion to Exclude Testimony, ECF 34, is DENIED as moot.

**IT IS SO ORDERED**.

DATED this 21st day of February, 2020.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge